interlock revocation. The sentence and sanctions imposed were not an abuse of discretion. Therefore, we affirm.

Affirmed.

————————————

Bruce Holdsworth, appellee, v. Greenwood Farmers Cooperative and Cooperative Mutual Insurance Company, Inc., appellants.

___ N.W.2d ___

Filed June 14, 2013.    No. S-12-403.

1. **Workers' Compensation: Appeal and Error.** An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.
2. **Jurisdiction.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.
3. **Appeal and Error.** The meaning of a statute is a question of law.
4. **Jurisdiction.** Jurisdiction does not relate to the right of the parties as between each other, but to the power of the court.
5. ____. Parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may subject matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties.
6. ____. The jurisdiction of courts is a public matter that cannot be affected by a private agreement, and the jurisdiction of a court can neither be acquired nor lost as a result of an agreement of the parties.
7. **Statutes: Appeal and Error.** An appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
8. **Workers' Compensation: Penalties and Forfeitures: Attorney Fees.** The waiting-time penalty and attorney fees for waiting-time proceedings provided under Neb. Rev. Stat. § 48-125 (Cum. Supp. 2012) are rights under the Nebraska Workers' Compensation Act.
9. **Workers' Compensation: Penalties and Forfeitures: Waiver.** The settlement procedures in Neb. Rev. Stat. § 48-139(3) (Reissue 2010) require a worker to waive all rights under the Nebraska Workers' Compensation Act, including both the right to penalties under Neb. Rev. Stat. § 48-125 (Cum. Supp. 2012) and the right to ask a judge of the compensation court to decide the parties' rights and obligations.
10. **Statutes: Appeal and Error.** An appellate court will not read into a statute a meaning that is not there.
11. **Statutes.** A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.

12. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the Workers' Compensation Court: THOMAS E. STINE, Judge. Reversed and remanded with direction.

Charles L. Kuper, of Larson, Kuper & Wenninghoff, P.C., L.L.O., for appellants.

Rolf Edward Shasteen, of Shasteen, Miner, Scholz & Morris, P.C., L.L.C., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, and CASSEL, JJ.

CASSEL, J.

## INTRODUCTION

In this workers' compensation appeal, the parties implemented a lump-sum settlement in compliance with Neb. Rev. Stat. § 48-139(3) (Reissue 2010), which dispenses with court approval. Pursuant to this statute, the worker filed a release in which he waived "all rights under the Nebraska Workers' Compensation Act" and discharged his employer from "further liability" on account of the injury. When the employer paid the lump-sum amount 42 days after the filing of the release, the worker sought and received a court order awarding a waiting-time penalty and attorney fees, from which the employer appeals. Because the worker's release waived his right to penalties and attorney fees, the order must be reversed.

## BACKGROUND

In November 2011, Bruce Holdsworth filed a petition for workers' compensation benefits alleging that he had been injured during his employment at Greenwood Farmers Cooperative. Holdsworth entered into a lump-sum settlement with Greenwood Farmers Cooperative and its workers' compensation insurance carrier (collectively appellants). Pursuant to this settlement, appellants agreed to make a one-time payment of $20,000 "to cover any future claims for indemnity benefits and future medical treatment and to close any and all liability for the accident of March 19, 2004." At the time of

settlement, appellants had already paid for all of Holdsworth's medical expenses, temporary total disability benefits, and permanent partial disability benefits for a 27-percent loss of earning capacity. Holdsworth agreed that he was not entitled to any further temporary total disability benefits or permanent partial disability benefits.

The parties opted to use the settlement procedures adopted by the Legislature in 2009 and outlined in § 48-139(3), which did not require approval by the Workers' Compensation Court but, instead, required the filing of a release. Accordingly, Holdsworth signed a release of liability, along with his attorney, and filed it with the court on January 11, 2012. In this release, Holdsworth waived "all rights under the Nebraska Workers' Compensation Act," including the right "to ask a judge of the compensation court to decide the parties' rights and obligations." Holdsworth also agreed that appellants were "fully and completely discharged from further liability" on account of his injury.

Although not required by § 48-139(3), the parties filed a joint stipulation and motion to dismiss with prejudice. On January 12, 2012, the court issued an order dismissing Holdsworth's petition with prejudice.

Holdsworth received the settlement payment from appellants in the form of a check dated February 21, 2012. The letter mailing the check was postmarked on February 22, which was 42 days after the release had been filed. Because payment was made more than 30 days after the filing of the release, Holdsworth filed a motion with the Workers' Compensation Court to obtain a waiting-time penalty and attorney fees pursuant to Neb. Rev. Stat. § 48-125 (Cum. Supp. 2012).

Appellants objected to Holdsworth's motion, arguing that § 48-125 was not applicable to settlements made under § 48-139(3). Specifically, appellants argued that when a settlement was finalized without court approval, there was no "entry of a 'final [o]rder, [a]ward, or [j]udgment'" to trigger the 30-day limitation. As for the order of dismissal, which Holdsworth had also suggested could serve as a final order for purposes of § 48-125, appellants maintained that such an order was "simply a housekeeping matter" to clear the docket,

highlighting that "no [c]ourt action is required to effectuate the settlement" executed pursuant to § 48-139(3).

On April 16, 2012, after an evidentiary hearing, the Workers' Compensation Court entered an order granting Holdsworth's motion for a waiting-time penalty and attorney fees. In its order, the Workers' Compensation Court considered whether the January 12 order of dismissal was a final order for purposes of § 48-125—focusing its analysis on the definition of a final order under Neb. Rev. Stat. § 25-1902 (Reissue 2008). The court concluded that the order of dismissal was a final order because it was made during a special proceeding and affected one of Holdsworth's substantial rights (the right to bring an action against appellants for his work-related injury). The court reached this conclusion despite a workers' compensation decision in an earlier case in which a different judge concluded the exact opposite—that the settlement procedures of § 48-139(3) *did not* produce a final order for purposes of § 48-125.

Having determined that the order of dismissal was a final order, the Workers' Compensation Court ruled that appellants were bound by the penalty provisions of § 48-125 and granted Holdsworth's motion for penalties. The court ordered appellants to pay a $10,000 waiting-time penalty and $500 in attorney fees for failing to pay the lump-sum settlement on time.

Appellants subsequently filed a motion to modify the court's April 16, 2012, order on the ground that there was a "reasonable controversy" over Holdsworth's right to penalties that precluded the imposition of such penalties. They cited to *McBee v. Goodyear Tire & Rubber Co.*,[1] in which this court construed § 48-125 as authorizing a waiting-time penalty only "where there is no reasonable controversy regarding an employee's claim for workers' compensation." Appellants argued that there was a reasonable controversy precluding the imposition of penalties because (1) the question whether penalties could be applied to settlements reached under § 48-139(3) was a question of law not yet addressed by this

---

[1] *McBee v. Goodyear Tire & Rubber Co.*, 255 Neb. 903, 908, 587 N.W.2d 687, 692 (1999).

court and (2) judges of the Workers' Compensation Court disagreed as to whether the settlement procedure of § 48-139(3) produced a final order for purposes of § 48-125. On April 25, the Workers' Compensation Court denied appellants' motion to modify.

Appellants timely appealed both the order imposing penalties and the order denying the motion to modify. We granted appellants' petition to bypass in order to address these questions brought about by the enactment of § 48-139(3) in 2009.

## ASSIGNMENTS OF ERROR

Appellants allege, reordered and restated, that the Workers' Compensation Court erred in (1) determining that it had jurisdiction to hear the motion for penalties after Holdsworth filed a release of liability pursuant to § 48-139(3), (2) concluding that the penalty provisions of § 48-125 applied to settlements made under § 48-139(3), (3) deciding that the order of dismissal was a final order for purposes of § 48-125, (4) determining that there was no reasonable controversy to preclude the imposition of penalties, and (5) awarding Holdsworth a waiting-time penalty and attorney fees.

## STANDARD OF REVIEW

[1] An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.[2]

[2,3] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[3] The meaning of a statute is also a question of law.[4]

## ANALYSIS

### Jurisdiction

Appellants question the jurisdiction of the Workers' Compensation Court to consider Holdsworth's motion for penalties following the parties' settlement under § 48-139(3). Because we have the duty to determine whether the lower court

---

[2] *Foster v. BryanLGH Med. Ctr. East*, 272 Neb. 918, 725 N.W.2d 839 (2007).

[3] *Midwest PMS v. Olsen*, 279 Neb. 492, 778 N.W.2d 727 (2010).

[4] *Id.*

had the power to enter the order in question, we consider this assignment of error first.[5]

Appellants base their argument that the Workers' Compensation Court lacked jurisdiction solely on the fact that Holdsworth had signed a "[r]elease of [l]iability specifically waiving his right to have a judge of the compensation court decide the rights and liabilities of the parties."[6] This release was in accordance with the settlement procedures outlined in § 48-139(3) and therefore also stated that Holdsworth waived "all rights under the Nebraska Workers' Compensation Act." According to § 48-139(3), "[s]uch release shall be a full and complete discharge from further liability for the employer on account of the injury . . . ." Because of this language of waiver and discharge, appellants allege that upon the filing of the signed release, the Workers' Compensation Court "was divulged of jurisdiction to hear and rule on" Holdsworth's motion for penalties.[7] This is an incorrect conclusion.

[4-6] As this court has previously stated, "[i]t is generally elementary that: 'Jurisdiction does not relate to the right of the parties as between each other, but to the power of the court.'"[8] Because jurisdiction does not relate to the rights of the parties, "[p]arties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may subject matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties."[9] Similarly, "the jurisdiction of courts is a public matter that cannot be affected by a private agreement, and the jurisdiction of a court can neither be acquired nor lost as a result of an agreement of the parties."[10]

---

[5] See *Currie v. Chief School Bus Serv.*, 250 Neb. 872, 553 N.W.2d 469 (1996), *limited on other grounds, O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998).

[6] Brief for appellant at 10.

[7] *Id.* at 12.

[8] *School Dist. No. 49 v. Kreidler*, 165 Neb. 761, 771, 87 N.W.2d 429, 436 (1958) (quoting 14 Am. Jur. *Courts* § 161 (1938)).

[9] *Cummins Mgmt. v. Gilroy*, 266 Neb. 635, 638, 667 N.W.2d 538, 542 (2003).

[10] 20 Am. Jur. 2d *Courts* § 95 at 479 (2005).

Given these basic principles of jurisdiction, the parties in the instant case could not deprive the Workers' Compensation Court of jurisdiction by private agreement. It necessarily follows that Holdsworth's waiver of rights—filed pursuant to a private settlement agreement—did not deprive the court of jurisdiction to hear further issues in the case. Whether Holdsworth was entitled to bring further issues before the court is a separate matter relating to his rights under the Nebraska Workers' Compensation Act—a matter that we will discuss shortly. But whatever Holdsworth's rights, our case law recognizes that the Workers' Compensation Court had continuing jurisdiction to enforce the award of workers' compensation benefits.[11] This assignment of error has no merit.

### Whether Penalty Provisions of § 48-125 Apply to Settlements Reached Under § 48-139(3)

Next, we must consider whether the penalty provisions of § 48-125 apply to settlements reached under the new procedures of § 48-139(3). We conclude that a worker waives his or her right to ask for penalties by filing the waiver required in § 48-139(3).

Section 48-139(3) imposes specific requirements to utilize the new settlement procedures not requiring court approval. Notably, the statute mandates that if a "lump-sum settlement is not required to be submitted for approval by the compensation court, *a release shall be filed* with the compensation court *in accordance with this subsection*."[12] In order to protect the worker's rights, § 48-139(3) requires that the release be signed and verified by both the worker and the worker's attorney. It also mandates that the release be made on a form approved by the compensation court and that the form notify the worker of particular rights conferred by the Nebraska Workers' Compensation Act. It further requires that the release "shall contain" certain statements, including a statement that the worker "waives all rights under the Nebraska Workers'

---

[11] See *Russell v. Kerry, Inc.*, 278 Neb. 981, 775 N.W.2d 420 (2009).

[12] § 48-139(3) (emphasis supplied).

Compensation Act, including, but not limited to: . . . [t]he right to ask a judge of the compensation court to decide the parties' rights and obligations."[13]

[7] We find no ambiguity in this language, but read it as a full waiver of any and all rights given to workers in the Nebraska Workers' Compensation Act. The statute does not qualify or limit the rights given up by the worker in the release, but states that the release is a waiver of "*all right*s under the Nebraska Workers' Compensation Act."[14] The Legislature also highlighted the expansiveness of the waiver by including in § 48-139(3) the words "including, but not limited to," which ensures that the waiver will not be limited only to rights specifically listed in the statute. Because we find no ambiguity, we give the statutory language of § 48-139(3) "its plain and ordinary meaning."[15] We "will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous."[16]

[8] Without doubt, the waiting-time penalty and attorney fees for waiting-time proceedings provided under § 48-125 are rights under the Nebraska Workers' Compensation Act. The broadly inclusive language of § 48-139(3) gives us no reason to believe that the rights provided by § 48-125 should be excluded from the scope of the statutory waiver.

Moreover, a worker cannot receive penalties under § 48-125 without relying upon another right explicitly waived by the release—"[t]he right to ask a judge of the compensation court to decide the parties' rights and obligations."[17] As § 48-125 has been interpreted by this court, there are only certain circumstances in which a worker is entitled to a waiting-time penalty.[18] Where the employer alleges that there was a reasonable

---

[13] *Id*.

[14] *Id*. (emphasis supplied).

[15] See *Pittman v. Western Engineering Co*., 283 Neb. 913, 925, 813 N.W.2d 487, 496 (2012).

[16] *Id*.

[17] § 48-139(3).

[18] See *Lagemann v. Nebraska Methodist Hosp*., 277 Neb. 335, 762 N.W.2d 51 (2009).

controversy, the worker's right to a waiting-time penalty must be decided by the Workers' Compensation Court.[19] And, an attorney fee may not be awarded pursuant to § 48-125(2)(a) due to a delay in paying compensation unless the worker receives an award of a waiting-time penalty. Therefore, a worker's entitlement to penalties under § 48-125 depends upon the worker's asking the court to decide both the worker's rights and the employer's obligations. But under the settlement procedure in § 48-139(3), the worker's release expressly waives this right.

[9] In summary, the settlement procedures in § 48-139(3) require a worker to waive "all rights under the Nebraska Workers' Compensation Act," including both the right to penalties under § 48-125 and "[t]he right to ask a judge of the compensation court to decide the parties' rights and obligations." Because a worker who enters into a lump-sum settlement without court approval and files a waiver in compliance with § 48-139(3) thereby waives "all" rights under the Nebraska Workers' Compensation Act, he or she also effectively waives the right to penalties under § 48-125. We agree with appellants that the penalty provisions of § 48-125 were waived by implementation of and compliance with the waiver procedures under § 48-139(3).

The partial dissent argues that the waiver required by § 48-139(3) is limited by the main paragraph of this subsection and extends only to "those liabilities that can be considered to be 'on account of the injury.'" It interprets the release statements required by § 48-139(3)(a) through (d) as implicitly incorporating this limitation.

But this interpretation reads words into § 48-139(3) that are not there. If the Legislature meant to limit the language of the release to "those liabilities that can be considered to be 'on account of the injury,'" then it would have qualified the release statement required by § 48-139(3)(a) so as to state that the worker waives only those rights under the Nebraska Workers'

---

[19] See, e.g., *Hobza v. Seedorff Masonry, Inc.*, 259 Neb. 671, 611 N.W.2d 828 (2000) (superseded by statute as stated in *Lovelace v. City of Lincoln*, 283 Neb. 12, 809 N.W.2d 505 (2012)).

Compensation Act "on account of the injury." But it did not. The statement of release provided by § 48-139(3)(a) would not accomplish the result urged by the dissent without this added language.

Additionally, the dissent's interpretation ignores the plain meaning of the word "all" in the various release statements. Under its interpretation, the word "all" is meaningless, because not all rights are waived, but only the rights and obligations "on account of the injury." Moreover, the Legislature not only said "all," it added the phrase "including, but not limited to."[20] This language cannot be reconciled with the approach urged by the dissent.

[10,11] When interpreting statutes, an appellate court will not "read into a statute a meaning that is not there."[21] Additionally, "[a] court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless."[22] The dissent's interpretation effectively adds language to the release statements required by § 48-139(3) and erases the clear statement in § 48-139(3)(a) that the worker waives "all" rights under the Nebraska Workers' Compensation Act.

Furthermore, the dissent claims that our interpretation will lead to the absurd result that a worker who has reached a settlement agreement with his employer would have no means of enforcing the settlement once the release has been filed, thereby allowing an employer "to indefinitely delay payment." Such an argument, however, ignores the reality that under § 48-139(3), the filing of a release by itself effects a discharge from liability and not actual payment, as is the case under the settlement procedures requiring court approval.[23] The supposedly absurd result is easily avoided by the simple expedient

---

[20] See § 48-139(3)(a).

[21] *Blakely v. Lancaster County*, 284 Neb. 659, 679, 825 N.W.2d 149, 166 (2012).

[22] *In re Interest of Zylena R. & Adrionna R.*, 284 Neb. 834, 846, 825 N.W.2d 173, 182 (2012).

[23] See § 48-139(2)(c).

of not delivering the release or stipulating to the dismissal of the case until the lump-sum payment is received. This happens every day in tort settlements, and we are not persuaded that a worker would be without a remedy where a release is fraudulently obtained.

In authorizing settlements without the protections inherent in the process of court approval, the Legislature struck a balance. Section 48-139(3) enables a worker to obtain a settlement more quickly, but in order to do so, it requires the worker to expressly waive his or her rights under the Nebraska Workers' Compensation Act. It is the function of the Legislature, through the enactment of statutes, to declare what is the law and public policy of this state.[24] Because the language of the statute is clear and unambiguous, it is not our province to disturb the balance framed by the Legislature.

## Remaining Assignments of Error

[12] Because we have concluded that Holdsworth waived his right to penalties by filing the release required by § 48-139(3), we need not consider appellants' remaining assignments of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[25]

## CONCLUSION

Because jurisdiction is a matter of the power of a court and not of the rights of the parties, the Workers' Compensation Court retains jurisdiction to consider additional matters following the filing of a release pursuant to the settlement procedures in § 48-139(3). However, because a worker waives all of his or her rights under the Nebraska Workers' Compensation Act, including the right to penalties under § 48-125, in such a release, a waiting-time penalty and the corresponding attorney fees cannot be imposed following a settlement reached under and implemented in compliance with

[24] *Bamford v. Bamford, Inc.*, 279 Neb. 259, 777 N.W.2d 573 (2010).

[25] *Spady v. Spady*, 284 Neb. 885, 824 N.W.2d 366 (2012).

§ 48-139(3). Accordingly, we reverse the order of the Workers' Compensation Court awarding a waiting-time penalty and attorney fees to Holdsworth, and remand the cause with direction to deny his petition for penalties.

Reversed and remanded with direction.

Miller-Lerman, J., participating on briefs.

McCormack, J., concurring in part, and in part dissenting.

I disagree with the majority's determination that a non-court-approved settlement, pursuant to Neb. Rev. Stat. § 48-139(3) (Reissue 2010), waives the employee's right to a waiting-period penalty under Neb. Rev. Stat. § 48-125 (Cum. Supp. 2012). An employee does not waive his or her right to the waiting-period penalty under § 48-139(3), because the penalty is not awarded "on account of" the injury. It is awarded "on account of" the employer's failure to timely deliver payment. Accordingly, I concur with the majority's holding on subject matter jurisdiction, but respectfully dissent on the issue of the waiting-period penalty.

The majority opinion errs in holding that all rights and obligations under the Nebraska Workers' Compensation Act (the Act) are unambiguously waived under a § 48-139(3) settlement agreement. A careful reading of § 48-139(3), in its entirety, reveals the statute itself limits the scope of the waiver signed by the employee. To understand the limited scope of the waiver, it is important to view the complete provision:

> (3) If such lump-sum settlement is not required to be submitted for approval by the compensation court, a release shall be filed with the compensation court in accordance with this subsection that is signed and verified by the employee and the employee's attorney. *Such release shall be a full and complete discharge from further liability for the employer on account of the injury, including future medical, surgical, or hospital expenses, unless such expenses are specifically excluded from the release.* The release shall be made on a form approved by the compensation court and shall contain a statement signed and verified by the employee that:
>
> (a) The employee understands and waives all rights under the . . . Act, including, but not limited to:

(i) The right to receive weekly disability benefits, both temporary and permanent;

(ii) The right to receive vocational rehabilitation services;

(iii) The right to receive future medical, surgical, and hospital services as provided in section 48-120, unless such services are specifically excluded from the release; and

(iv) The right to ask a judge of the compensation court to decide the parties' rights and obligations;

(b) The employee is not eligible for medicare, is not a current medicare beneficiary, and does not have a reasonable expectation of becoming eligible for medicare within thirty months after the date the settlement is executed;

(c) There are no medical, surgical, or hospital expenses incurred for treatment of the injury which have been paid by medicaid and not reimbursed to medicaid by the employer as part of the settlement; and

(d) There are no medical, surgical, or hospital expenses incurred for treatment of the injury that will remain unpaid after the settlement.[1]

Read properly as a whole statute, consisting of a main paragraph, subsections, and sub-subsections, the main paragraph clearly limits the waiver to only those liabilities that can be considered to be "on account of the injury." This qualification is crucial as it indicates a clear intent by the Legislature to limit the liabilities that an employee waives in a non-court-approved settlement. In contrast, the majority opinion does not give due consideration to "on account of" and myopically focuses on subsections (3)(a) through (d) as an extensive release for the employer.

The majority opinion's decision to ignore the main paragraph is in error, because the inclusion of "on account of" by the Legislature was not by happenstance. When one reads the entirety of § 48-139, one finds that "on account of" is also used by the Legislature in § 48-139(2)(c). Section

---

[1] § 48-139(3) (emphasis supplied).

48-139(2)(c) is the longstanding statute that enables court-approved lump-sum settlement agreements. It states in its relevant part: "Upon paying the amount approved by the compensation court, the employer (i) shall be discharged from further liability *on account of the injury* . . . ."[2] The placement of "on account of the injury" specifies which liability is discharged. Therefore, the inclusion by the Legislature of "on account of" in § 48-139(3) was included as an intentional limitation on the employee's release of liability.

The majority's argument is that "on account of" is not used in subsections (3)(a) through (d) and therefore is irrelevant to interpreting those subsections. Such an argument ignores our rule that when reading a statute, we must not look merely to a particular clause but must read it in connection with the whole statute.[3] The majority's focus on only the subsections ignores the grammatical structure of § 48-139(3).

The grammatical structure indicates that the subsections are dependent on the sentences and clauses found in the main paragraph. Subsections (a) through (d) are offset underneath the main paragraph of § 48-139(3). These subsections are dependent on the main paragraph of § 48-139(3), because the subsections would become nonsensical if the main paragraph was removed. This is first evident in the use of a colon at the end of the first paragraph, which indicates that subsections (a) through (d) are a list. Without the main paragraph, the purpose of the list would be unknown.

Second, if the subsections are read in a vacuum without the main paragraph, the release language found in subsection (3)(a), for instance, would forever waive the employee's rights under the Act. Likewise, reading subsections (3)(a) and (a)(iv), in a vacuum and without adding implied language, an employee would be prevented from seeking redress with the compensation court even if the employee is injured again in an unrelated accident. It is illogical to assume that the Legislature intended to waive every right of an employee under the Act in

---

[2] § 48-139(2)(c) (emphasis supplied).

[3] See *Dada v. Mukasey*, 554 U.S. 1, 128 S. Ct. 2307, 171 L. Ed. 2d 178 (2008).

a sub-subsection, where the Legislature appears to have copied and pasted "standard form" release language. For that reason, it is necessary to understand that the grammatical structure of § 48-139(3) necessitates that the dependent subsections cannot be read without due consideration of the independent clauses found in the main paragraph.

When read in the proper context, I find that "on account of the injury" qualifies the rights, obligations, and liabilities waived by the employee throughout § 48-139(3). When the employee signs the release statement, he or she is releasing the employer from any obligation or liability that is on account of *that* injury. For instance, § 48-139(3)(a) should be understood to state that "[t]he employee understands and waives all rights [on account of the injury] under the . . . Act . . . ." Section 48-139(3)(a)(ii) should be understood as "[t]he right to receive vocational rehabilitation services [on account of the injury]." And likewise, the language relied upon heavily by the majority should be read as "[t]he employee understands and waives all rights [on account of the injury] under the . . . Act, including, but not limited to: . . . [t]he right to ask a judge of the compensation court to decide the parties' rights and obligations [on account of the injury]."[4] Such readings are logical under the grammatical structure of the statute.

Having established that "on account of" qualifies the rights, obligations, and liabilities discussed in § 48-139(3), it is necessary to determine whether a waiting-period penalty is awarded "on account of the injury." To do so, I rely on the plain meaning of "on account of," which is defined as "for the sake of: by reason of,"[5] or "because of."[6] Using these definitions, I find that a waiting-period penalty is not a liability by reason of or because of the employee's injury, but, rather, is levied under § 48-125 because of or by reason of the delay in payment.

---

[4] See § 48-139(3)(a)(iv).

[5] Merriam-Webster's Collegiate Dictionary 8 (10th ed. 2001), available at http://www.merriam-webster.com/dictionary/account.

[6] Webster's Third New International Dictionary of the English Language, Unabridged 13 (1993).

As in *O'Gilvie v. United States*,[7] where the U.S. Supreme Court also defined "on account of" to mean "because of," the waiting-period penalty, like punitive damages, is not awarded "on account of the injury," but, rather, is awarded because of the employer's bad acts. In *O'Gilvie*, punitive damages were awarded. The issue before the Court was whether the punitive damages were excluded from gross income. "Internal Revenue Code § 104(a)(2), as it read in 1988, excluded from 'gross income' the 'amount of any *damages received* (whether *by suit* or agreement and whether as lump sums or as periodic payments) *on account of personal injuries or sickness*.'"[8]

The Court used the dictionary definition "because of" and held that punitive damages were not received *on account of* the personal injuries, but, rather, were awarded on account of, or because of, the defendant's conduct and the jury's need to punish and deter such conduct.[9] The Court found that punitive damages """"are not compensation for injury [but] [i]nstead . . . are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence."'"[10] In coming to this holding, the U.S. Supreme Court rejected the petitioners' argument that but for the personal injury, there would be no lawsuit, and but for the lawsuit, there would be no damages.

Here, as in *O'Gilvie*, the waiting-period penalty under § 48-125 is not compensation for the worker's injury but instead is a penalty levied by the compensation court to punish the employer for failure to make prompt payment. Thus, the waiting-period *penalty* is not awarded on account of the employee's injury, but is awarded on account of the employer's failure to deliver timely payment.

Therefore, I believe the plain meaning of § 48-139(3), read in its entirety, is that the employee waives his or her rights under the Act that are on account of the underlying

---

[7] *O'Gilvie v. United States*, 519 U.S. 79, 117 S. Ct. 452, 136 L. Ed. 2d 454 (1996).

[8] *Id.*, 519 U.S. at 81 (emphasis in original).

[9] *O'Gilvie v. United States, supra* note 7.

[10] *Id.*, 519 U.S. at 83.

injury. Thus, the statute does not waive the employee's right to ask the compensation court to enforce the payment of the settlement agreement through the use of a § 48-125 waiting-period penalty. Such a penalty is not awarded "on account of the injury."

I believe my plain reading of the statute is correct. However, our rules of statutory interpretation state that a statute is ambiguous if it is susceptible of more than one reasonable interpretation.[11] I will entertain the majority opinion as reasonable for purposes of examining the legislative history in this dissent.

When construing an ambiguous statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.[12]

The Legislature enacted the Act to relieve injured workers from the adverse economic effects caused by a work-related injury or occupational disease.[13] In light of this beneficent purpose of the Act, we have consistently given it a broad construction to carry out justly the spirit of the Act.[14]

To carry out the spirit of the Act, this court has liberally construed the waiting-period penalty provision in the past. Section 48-125(1)(b) states in its relevant part: "Fifty percent shall be added for waiting time for all delinquent payments after thirty days' notice has been given of disability or after thirty days from the entry of a final order, award, or judgment of the Nebraska Workers' Compensation Court . . . ." We have held that the purpose of the 30-day waiting-period penalty and the provision for attorney fees in § 48-125 is to encourage prompt payment by making delay costly if the award has

---

[11] *In re Interest of Erick M.*, 284 Neb. 340, 820 N.W.2d 639 (2012).

[12] *Travelers Indem. Co. v. Gridiron Mgmt. Group*, 281 Neb. 113, 794 N.W.2d 143 (2011).

[13] *Foote v. O'Neill Packing*, 262 Neb. 467, 632 N.W.2d 313 (2001).

[14] See *Moyera v. Quality Pork Internat.*, 284 Neb. 963, 825 N.W.2d 409 (2013).

been finally established.[15] The only legitimate excuse for delay in the payment of compensation benefits is the existence of a genuine dispute from a medical or legal standpoint that any liability exists.[16]

To further encourage prompt payment, in *Hollandsworth v. Nebraska Partners*,[17] we held that the payment of a court-approved lump-sum settlement in a workers' compensation case is subject to a waiting-period penalty under § 48-125. We noted that because a delay in payment to the employee results when a case is contested, the disabled worker's need for the prompt payment of benefits is especially urgent after a final adjudicated award.[18] In such instances, the employee has had to do without a weekly stipend for a longer period than when an employer does not contest the worker's right to benefits.[19] Thus, it is important to discourage unnecessary delay in the payment of a court-approved settlement agreement.[20]

In addition, the legislative history of § 48-139(3)—which was introduced after our opinion in *Hollandsworth*—reaffirms the importance of discouraging unnecessary delay in the payment of a settlement agreement under that section. The bill's introducer stated she "introduced this bill as a way to help injured employees received [sic] their benefits more quickly."[21] She went on to explain to the Business and Labor Committee that the purpose of the legislation was to expedite payments from the employer to the employee, stating:

> [T]he general purpose behind this legislation, it is really about efficiency. When an injured person is fully represented by competent counsel [and] both parties have

---

[15] *Roth v. Sarpy Cty. Highway Dept.*, 253 Neb. 703, 572 N.W.2d 786 (1998).

[16] *Id.*

[17] *Hollandsworth v. Nebraska Partners*, 260 Neb. 756, 619 N.W.2d 579 (2000).

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] Public Hearing, L.B. 194, Business and Labor Committee, 101st Leg., 1st Sess. 1 (Feb. 9, 2009).

been able to reach agreement on what would be an appropriate settlement and that injured worker is waiting, many times in dire circumstances without income coming in and their [sic] receiving, for example, notifications that maybe their [sic] utilities might be turned off and they [sic] have no resources available to them [sic] until the settlement is granted. So by erasing the undue burden that this additional administrative step could impose, it just seeks to improve efficiency within the system.[22]

The legislative history demonstrates that the statute was not intended, and should not be interpreted, to waive every employee right under the Act. Rather, the statute's intention is to expedite payment.

To be consistent with the legislative history, we should reject the majority opinion, because its interpretation allows an employer to indefinitely delay payment. This is because the majority interpretation prevents Holdsworth from asking the compensation court to enforce the settlement agreement he signed with his employer. That would be asking the compensation court to decide the parties' rights and obligations concerning the settlement agreement. It gets worse. Under the majority opinion, Holdsworth could not file a separate cause of action in a Nebraska district court, or any court, because the compensation court has exclusive subject matter jurisdiction over § 48-139(3) settlement agreements.[23] It is unclear how an employee would be able, if at all, to force the employer to make payment.

An interpretation that allows for an indefinite delay of payment is an absurd result. In *Soto v. State*,[24] we held that we should never interpret a provision of the Act in a manner that creates a circumstance whereby an employer could indefinitely delay payment of a portion of a workers' compensation judgment without penalty. The majority opinion does just that.

---

[22] *Id*.

[23] See *Abbott v. Gould, Inc.*, 232 Neb. 907, 443 N.W.2d 591 (1989).

[24] *Soto v. State*, 269 Neb. 337, 693 N.W.2d 491 (2005), *modified on denial of rehearing* 270 Neb. 40, 699 N.W.2d 819.

In response, the majority opinion argues that the "supposedly absurd result is easily avoided by the simple expedient of not delivering the release or stipulating to the dismissal of the case until the lump-sum payment is received." This ignores the realities of this case and the realities discussed by both of the parties' attorneys during oral argument. In this instance, Holdsworth's experienced workers' compensation attorney did not demand that the insurance company pay before having his client sign the release agreement. During oral argument, the employer's attorney acknowledged that it was common practice for the release to be filed prior to payment. He attributed this to the practice of receiving court approval of a signed settlement agreement reached under § 48-139(2)(c) before payment. Likewise, Holdsworth's attorney agreed with opposing counsel and argued during oral argument that in his experience, an insurance company would not issue a check prior to a signed release statement. Although both attorneys did acknowledge that, in theory, payment and signing of the release could happen simultaneously, neither attorney was willing to endorse it as practical. Either way, in the world of the majority opinion, an employee will have to require payment before signing the release statement—a practice insurance companies may not be willing to accommodate. Thus, non-court-approved settlements will risk falling out of favor, defeating the statute's purpose of expediting payment.

My interpretation of § 48-139(3), which encourages prompt payment by allowing waiting-period penalties, is consistent with the legislative history of § 48-139(3) and with the beneficent purpose of the Act. This court should continue to recognize the necessity of enforcing timely payment by allowing the waiting-period penalty to apply to this settlement agreement.

Because a waiting-period penalty can be awarded to non-court-approved settlements, we must determine whether the facts of this case meet the requirements for awarding the penalty under § 48-125. The compensation court's dismissal in this case was a final adjudicated order under our precedent in *Hollandsworth*, and the payment was due within

30 days of the dismissal order.[25] Payment was received by Holdsworth 42 days after the compensation court dismissed his claim pursuant to the settlement agreement. There can be no legal or medical dispute over liability, because the parties had reached an agreement for payment. Therefore, the employer's failure to promptly pay is not excused, and the award was proper.

I respectfully dissent from the majority opinion's conclusion that an employee waives his or her right to a waiting-period penalty when reaching a non-court-approved settlement pursuant to § 48-139(3). Accordingly, I would affirm the compensation court's decision to grant Holdsworth's motion for penalties.

---

[25] See *Hollandsworth v. Nebraska Partners, supra* note 17.

---

State of Nebraska ex rel. Commission on
Unauthorized Practice of Law, relator,
v. Paul J. Hansen, respondent.
___ N.W.2d ___

Filed June 14, 2013.    No. S-12-475.

1. **Rules of the Supreme Court: Attorneys at Law.** The Nebraska Supreme Court has the inherent power to define and regulate the practice of law and is vested with exclusive power to determine the qualifications of persons who may be permitted to practice law.
2. ____: ____. The inherent power of the Nebraska Supreme Court to define and regulate the practice of law includes the power to prevent persons who are not attorneys admitted to practice in this state from engaging in the practice of law.
3. **Attorney and Client: Actions.** A legal proceeding in which a party is represented by a person not admitted to practice law is considered a nullity and is subject to dismissal.
4. **Rules of the Supreme Court: Attorneys at Law.** Pursuant to its inherent authority to define and regulate the practice of law in Nebraska, the Nebraska Supreme Court has adopted rules specifically addressed to the unauthorized practice of law. The purpose of the rules is to protect the public from potential harm caused by the actions of nonlawyers engaging in the unauthorized practice of law.

Original action. Injunction issued.