with the terms of probation, the monitoring attorney shall report the same to relator.

## VI. CONCLUSION

It is the judgment of this court that respondent should be and hereby is suspended from the practice of law for a period of 45 days, effective immediately. It is the further judgment of this court that upon completion of the period of suspension and reinstatement to the bar, respondent shall be placed on monitored probation for 2 years, subject to the terms set forth above.

Judgment of suspension.

McCormack, J., not participating.

————————————

Kim Conroy, Tax Commissioner, and Ruth Sorenson, Property Tax Administrator, appellants, v. Keith County Board of Equalization and Central Nebraska Public Power and Irrigation District, appellees.

___ N.W.2d ___

Filed May 23, 2014.    No. S-13-277.

1. **Taxation: Judgments: Appeal and Error.** An appellate court reviews decisions rendered by the Tax Equalization and Review Commission for errors appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.
3. **Taxation: Appeal and Error.** An appellate court reviews questions of law arising during appellate review of decisions by the Tax Equalization and Review Commission de novo on the record.
4. **Judgments: Jurisdiction.** Jurisdictional questions that do not involve a factual dispute present questions of law.
5. **Constitutional Law: Intent.** Constitutional provisions are not open to construction as a matter of course; construction is appropriate only when it has been demonstrated that the meaning of the provision is not clear and that construction is necessary.
6. **Constitutional Law: Courts: Intent.** If the meaning is clear, the Nebraska Supreme Court gives a constitutional provision the meaning that laypersons would obviously understand it to convey.

7. **Jurisdiction: Appeal and Error.** An appellate court has a duty to raise and determine any jurisdictional issue of its own accord.
8. **Constitutional Law: Statutes.** The rules of statutory interpretation apply to constitutional interpretation as well.
9. **Statutes.** When a statute specifically provides for exceptions, items not excluded are covered by the statute.
10. **Constitutional Law.** In the interpretation of the Constitution, a specific clause will be given effect as against a general clause in such manner as to give meaning to both, and the language of the specific clause will not be restricted by the language of the general clause.
11. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the Tax Equalization and Review Commission. Affirmed in part, and in part vacated.

Jon Bruning, Attorney General, and Jonathan D. Cannon, Special Assistant Attorney General, for appellants.

Randy Fair, Keith County Attorney, for appellee Keith County Board of Equalization.

Charles D. Brewster, of Anderson, Klein, Swan & Brewster, for appellee Central Nebraska Public Power and Irrigation District.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Wright, J.

## I. NATURE OF CASE

For tax year 2011, the county assessor of Keith County, Nebraska, decided to assess property taxes on several parcels of land that were owned by Central Nebraska Public Power and Irrigation District (Central) but leased to private parties. In regard to each leased parcel, the county assessor sent a "Notice of Taxable Status" to Central. Central protested the tax assessment, and the Keith County Board of Equalization (Board) recommended "approving Central's protests and not tax[ing] the land."

The Tax Commissioner and the Property Tax Administrator of the Nebraska Department of Revenue appealed to the Tax Equalization and Review Commission (TERC), which affirmed

the Board's decision that the relevant parcels "should not be taxed," because Central had already made a payment "in lieu of tax" for that year pursuant to article VIII, § 11, of the Nebraska Constitution. The Tax Commissioner and Property Tax Administrator now appeal from TERC's order. We affirm in part, and in part vacate TERC's order.

## II. SCOPE OF REVIEW

[1-3] We review TERC decisions for errors appearing on the record. *Lozier Corp. v. Douglas Cty. Bd. of Equal.*, 285 Neb. 705, 829 N.W.2d 652 (2013). When reviewing a judgment for errors appearing on the record, our inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable. *Id.* We review questions of law arising during appellate review of TERC decisions de novo on the record. *Id.*

[4] Jurisdictional questions that do not involve a factual dispute present questions of law. *Pinnacle Enters. v. City of Papillion*, 286 Neb. 322, 836 N.W.2d 588 (2013).

[5,6] As in statutory interpretation, the construction of constitutional provisions requires us to apply basic tenets of interpretation. Constitutional provisions are not open to construction as a matter of course; construction is appropriate only when it has been demonstrated that the meaning of the provision is not clear and that construction is necessary. *Banks v. Heineman*, 286 Neb. 390, 837 N.W.2d 70 (2013). If the meaning is clear, we give a constitutional provision the meaning that laypersons would obviously understand it to convey. *City of North Platte v. Tilgner*, 282 Neb. 328, 803 N.W.2d 469 (2011).

## III. FACTS

The original appellants were Douglas A. Ewald, who served as the Tax Commissioner at the time the appeal was initiated, and Ruth Sorensen, Property Tax Administrator, of the Department of Revenue. After this appeal was argued and submitted, we sustained the appellants' motion to substitute Kim Conroy, the current Tax Commissioner, for Ewald. Hereinafter, we refer to the appellants as "the Department."

Central is a political subdivision of the State of Nebraska that owns and manages Lake McConaughy and over 38,000

acres of land surrounding it. Central provides irrigation, hydropower generation, endangered species management, and recreational opportunities for the public. As a public power and irrigation district, Central makes an annual payment in lieu of tax pursuant to article VIII, § 11. The record reflects that Central made a payment in lieu of tax for tax year 2011.

This appeal involves 13 parcels of land around Lake McConaughy that Central leases to other parties. Four of the parcels are leased to private businesses that put the land to commercial use. Eight of the parcels are leased to Lake McConaughy Lessees, Inc., which in turn sublets the parcels to individuals for residential use. The final parcel is leased directly to an individual who uses the land for a single-family residence. In all cases except one, the lessees or sublessees, and not Central, own the improvements on the parcels.

For tax year 2011, the Keith County assessor determined that Central was liable for property taxes on the relevant parcels, because the parcels were being "leased out for residential or commercial use" and should be "treated uniformly & equitably with other governmental properties leased out for other than public purposes." Upon receiving a "Notice of Taxable Status" for each parcel, Central filed protests with the Board, claiming that the parcels were exempt from taxation under Neb. Rev. Stat. § 77-202(1)(a) (Supp. 2011). This statute provides in pertinent part that property of the state or a governmental subdivision is exempt from taxation when it is used for a public purpose. The Board recommended "approving Central's protests and not tax[ing] the land."

In the case of all 13 parcels, the Department appealed the Board's determinations to TERC, alleging that the parcels were not being used for a public purpose. TERC sent notice of the appeals to the Board, Central, and the Department, but not to the lessees of the parcels. It held a consolidated hearing at which the parties adduced evidence as to the use of the parcels by the lessees or sublessees, Central's reasons for leasing the parcels, and Central's obligations to manage Lake McConaughy. During the hearing, the Department asked TERC to take judicial notice of the legislative history of several statutes governing the taxation of public property. TERC stated

that it would take "statutory notice" of the legislative history "to the extent allowed in [its] own rules."

The Department argued that to the extent any of the relevant parcels were not being used for a public purpose, the parcels were subject to taxation under article VIII, § 2, of the Nebraska Constitution, regardless of the fact that Central had made a payment in lieu of tax for tax year 2011. It asserted that leasing the relevant parcels to private individuals for residential or commercial use was not a public purpose. Central argued that the dominant purpose of leasing the relevant parcels was to provide a "buffer zone" for Lake McConaughy as required by Central's Federal Energy Regulatory Commission permit and that the parcels were thus used for a public purpose.

TERC affirmed the decisions of the Board. It rejected the argument that Central's property tax liability was determined based on the use of its property, pursuant to article VIII, § 2. Consequently, TERC did not decide whether the relevant parcels were used for a public purpose. Instead, TERC concluded that the applicable issue was Central's payment in lieu of tax under article VIII, § 11. It found that § 11 was "consistent and harmonious" with the public purpose requirement of § 2, because § 2 "specifically limits the ability of the Legislature to impose or authorize property taxes or further payments in lieu of property taxes to those instances as provided by law."

TERC found it was "uncontested that Central is a political subdivision organized primarily for the production of irrigation and electricity and that Central has made annual payments in lieu of taxes as required by Article VIII, Section 11 of the Nebraska Constitution." It also found that the language of § 11 prevented the assessment of property taxes on any of Central's land. Accordingly, TERC held that Central was "not liable for additional tax obligations for real property in these appeals." It ordered that there should be "no assessed value" and "no separate property tax obligation" for the relevant parcels for tax year 2011, because "any and all property tax obligations [had] been included in Central's payment in lieu of taxes."

The Department timely appeals. Pursuant to our statutory authority to regulate the dockets of the appellate courts of this

state, we moved the case to our docket. See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

## IV. ASSIGNMENTS OF ERROR

The Department principally assigns that TERC erred by concluding pursuant to article VIII, § 11, that property held by a public power and irrigation district upon which payments in lieu of tax are made is exempt from all other taxes, regardless of whether the property is being used for a public purpose. Specifically, the Department assigns, summarized and restated, that TERC erred in concluding that its interpretation of article VIII, § 2, was consistent and harmonious with § 11; in failing to consider Nebraska statutes that create a mechanism for imposing taxes upon those who lease property from the state or a governmental subdivision; and in failing to address whether the relevant parcels were being used for a public purpose. The Department also assigns that TERC erred by taking "statutory notice" and not judicial notice of the legislative history offered by the Department.

## V. ANALYSIS

### 1. Jurisdiction

The Department initially claimed that it filed its appeals with TERC pursuant to Neb. Rev. Stat. § 77-202.04 (Cum. Supp. 2010), under which its appeals would not have been timely. In responding to the Department's appeals to TERC, Central had alleged that the appeals were untimely and moved to dismiss all 13 appeals, but TERC did not rule on the matter and Central did not raise the issue on appeal. The Department has since abandoned its claim that its appeals were filed under § 77-202.04.

[7] Nonetheless, an appellate court has a duty to raise and determine any jurisdictional issue of its own accord. See *Pinnacle Enters. v. City of Papillion*, 286 Neb. 322, 836 N.W.2d 588 (2013). Therefore, we directed the parties to file supplemental briefs on the question whether the Department had timely filed its appeals from the Board's decisions.

In an appeal from the determination of a county board of equalization, Neb. Rev. Stat. § 77-5013(2) (Cum. Supp.

2012) states generally that "[i]f no date is otherwise provided by law, then an appeal shall be filed within thirty days after the decision, order, determination, or action appealed from is made." In their supplemental briefs, both parties argue that the Department's appeals were governed by one of these alternative appellate deadlines. We agree.

As contemplated by § 77-5013(2), there is an alternative timeframe for an appeal from a determination whether property of the state or a governmental subdivision is used for a public purpose. See Neb. Rev. Stat. § 77-202.12 (Reissue 2009). The procedure for such an appeal is set in motion when the county assessor sends notice of taxable status to the governmental entity. See *id*. If the governmental entity has leased the property and does not intend to voluntarily pay the tax, it is to forward the notice to the lessee. See *id*. The governmental entity and the lessee can appeal the taxation to the county board of equalization. See *id*. In turn, the decision of the county board of equalization can be appealed to TERC. See *id*. Such an appeal must be made "on or before June 1." See *id*.

In the instant case, the parties availed themselves of the procedure in § 77-202.12. The county assessor sent a "Notice of Taxable Status" to Central for each of the relevant parcels. But Central, instead of forwarding the notices to its lessees, filed protests with the Board. The Board approved Central's protests, and the Department appealed to TERC.

Given the manner in which the proposed taxation and the protests were framed, the issue to be decided by the Board, and the determination from which the Department appealed, was whether the relevant parcels were used for a public purpose. The county assessor sought to assess property taxes against Central on the ground that the parcels were not being used for a public purpose. She recommended to the Board that Central's parcels "be treated uniformly & equitably with other governmental properties leased out for other than public purposes." In its protests, Central alleged that the parcels were being used for a public purpose and were thus exempt under § 77-202(1)(a). The Board recommended "approving Central's protests and not tax[ing] the land."

Once the appeals were docketed with TERC, Central's payment in lieu of tax became the applicable issue, and TERC did not decide whether the parcels were being used for a public purpose. But this does not alter the fact that the appeals were taken pursuant to § 77-202.12.

For the aforementioned reasons, the Department's appeals were governed by the June 1 deadline of § 77-202.12(3). The Department filed its appeals with TERC on June 1, 2011. As such, the Department's appeals were timely and TERC had subject matter jurisdiction.

However, TERC could not consider whether property taxes on the relevant parcels could be assessed against Central's lessees without exceeding its jurisdiction in this case. TERC affirmed the Board's approval of Central's protests. But TERC also ordered that the "Subject Properties should not be taxed," that there should be "no assessed value" and "no separate property tax obligation" for the relevant parcels, and that "any and all property tax obligations" on the parcels were covered by Central's payment in lieu of tax. These orders did not determine the use of the respective parcels but had implications regarding the lessees, against whom property taxes on the parcels might be assessed pursuant to Neb. Rev. Stat. § 77-202.11(1) (Reissue 2009) if the use was not an authorized public use. Although the order was limited to the 2011 tax year, through these orders, TERC precluded the assessment of property taxes on the parcels against the lessees.

The lessees had not been sent notice by the county assessor or Central, despite the fact that §§ 77-202.11 and 77-202.12 provide direct and indirect methods, respectively, for providing such notice. The lessees were not parties to the protests before the Board, even though lessees of public property have the ability to protest under § 77-202.12(2). The lessees were not made parties in the appeals before TERC, and they did not intervene.

Without the lessees being parties to the action, TERC could not determine whether there should be a separate tax obligation on the parcels or whether the parcels had an assessed value. Furthermore, for reasons that we will explain later in this opinion, TERC could not make a determination as to the

lessees' tax obligations without also determining whether the parcels were or were not used for a public purpose. TERC did not make this determination as to public purpose, and such determination was not required in order for TERC to conclude that Central was not liable for the assessments on the parcels.

Because TERC lacked jurisdiction to decide whether property taxes on the relevant parcels could be assessed against the lessees, this court necessarily lacks jurisdiction to review that aspect of TERC's decision. Even so, we have the power to "determine whether [we lack] jurisdiction over an appeal because the lower court lacked jurisdiction to enter the order; to vacate a void order; and, if necessary, to remand the cause with appropriate directions." See *In re Interest of Trey H.*, 281 Neb. 760, 767, 798 N.W.2d 607, 613 (2011).

Despite the fact that TERC lacked jurisdiction to determine whether property taxes on the relevant parcels could be assessed against the lessees, TERC had jurisdiction to consider Central's tax liability. Our jurisdiction is similarly limited to review of that question.

## 2. Whether Property Taxes Can Be Assessed Against Central

The remaining question is: Did Central's payment in lieu of tax exempt it from liability for property taxes regardless of whether the parcels were used for an "authorized public purpose"? TERC concluded that "Central is not liable for additional tax obligations" for tax year 2011, because Central had made a payment in lieu of tax for that year. We agree and, therefore, affirm that part of TERC's order that Central was not liable for additional tax obligations on the relevant parcels.

### (a) Effect of Article VIII, § 11, Payment in Lieu of Tax

Central made its payment pursuant to article VIII, § 11, which states in pertinent part as follows:

> Every public corporation and political subdivision organized primarily to provide electricity or irrigation

and electricity shall annually make the same payments in lieu of taxes as it made in 1957, which payments shall be allocated in the same proportion to the same public bodies or their successors as they were in 1957.

. . . The payments in lieu of tax as made in 1957, together with any payments made as authorized in this section *shall be in lieu of all other taxes*, payments in lieu of taxes, franchise payments, occupation and excise taxes, but shall not be in lieu of motor vehicle licenses and wheel taxes, permit fees, gasoline tax and other such excise taxes or general sales taxes levied against the public generally.

(Emphasis supplied.)

As in statutory interpretation, the construction of constitutional provisions requires us to apply basic tenets of interpretation. Constitutional provisions are not open to construction as a matter of course; construction is appropriate only when it has been demonstrated that the meaning of the provision is not clear and that construction is necessary. *Banks v. Heineman*, 286 Neb. 390, 837 N.W.2d 70 (2013). If the meaning is clear, we give a constitutional provision the meaning that laypersons would obviously understand it to convey. *City of North Platte v. Tilgner*, 282 Neb. 328, 803 N.W.2d 469 (2011).

As it relates to whether Central is obligated to pay property taxes in addition to making a payment in lieu of tax, the meaning of article VIII, § 11, is clear. Central's payment in lieu of tax for a particular tax year eliminated its liability for property taxes in that same year.

Article VIII, § 11, requires "[e]very public corporation and political subdivision organized primarily to provide electricity or irrigation and electricity" to make an annual payment "in lieu of tax." "In lieu of" means "in the place of" or "instead of." Webster's Third New International Dictionary of the English Language, Unabridged 1306 (1993). Thus, a payment made "in lieu of" a tax is a payment made instead of that tax. Any payment made "in lieu of tax" under § 11 is in lieu of "all other taxes" except the specific taxes or fees described in the Nebraska Constitution. We interpret "all" according to its

plain and ordinary sense—"the whole amount or quantity of." Webster's, *supra* at 54.

[8,9] We also interpret the phrase "in lieu of all other taxes" in light of the exceptions listed. The rules of statutory interpretation apply to constitutional interpretation as well. See *Hall v. Progress Pig, Inc*., 259 Neb. 407, 610 N.W.2d 420 (2000). One of these rules provides that "'[w]hen a statute specifically provides for exceptions, items not excluded are covered by the statute.'" See *Chapin v. Neuhoff Broad.-Grand Island, Inc*., 268 Neb. 520, 527, 684 N.W.2d 588, 593 (2004) (alteration in original), quoting *Knight v. Johnson*, 741 S.W.2d 842 (Mo. App. 1987). We apply this rule when interpreting article VIII, § 11, which specifically provides that certain taxes are not covered by a payment in lieu of tax. The language of § 11 does not include property taxes within this exception. This omission means that property taxes are covered by the phrase "all other taxes." Accordingly, property taxes are among the taxes covered by a payment in lieu of tax.

### (b) Article VIII, § 2, Public Purpose Requirement Not Relevant

A payment in lieu of tax made pursuant to article VIII, § 11, has the effect of exempting Central from paying property taxes by taking the place of any property tax obligations it might otherwise have been required to pay for that tax year. But it is incorrect to read § 11 as "exempting" the parcels in question. The language of § 11 does not indicate that the property of political subdivisions governed by § 11 is completely exempt from taxation.

Despite this distinction between Central's exemption by payment in lieu of tax and an exemption for the property itself, the Department argues that TERC erred by failing to consider the public purpose requirement found in article VIII, § 2, which relates to the exemption of public property. The Department claims it was error for TERC to conclude that article VIII, § 11, made consideration of public purpose unnecessary. We do not agree. Consideration of the parcels' use was not necessary for TERC's determination that Central was not liable for property taxes.

### (i) Analysis of Constitutional Language

Article VIII, § 2, exempts the property of the state or a governmental subdivision from taxation if it is used for an authorized public purpose and gives the Legislature discretion to decide how to treat public property that is not used for an authorized purpose. Section 2 provides:

> The property of the state and its governmental subdivisions . . . shall be exempt from taxation to the extent such property is used by the state or governmental subdivision for public purposes authorized to the state or governmental subdivision by this Constitution or the Legislature. To the extent such property is not used for the authorized public purposes, the Legislature may classify such property, exempt such classes, and impose or authorize some or all of such property to be subject to property taxes or payments in lieu of property taxes *except as provided by law*.

(Emphasis supplied.)

The phrase "except as provided by law" indicates that other laws, including provisions of the Nebraska Constitution, may limit the Legislature's ability to tax a governmental subdivision which has property not used for a public purpose. The Legislature's broad discretion regarding such taxation must yield to more specific limitations when such limitations are imposed by the Nebraska Constitution.

Article VIII, § 11, provides a specific limitation on the Legislature's ability to assess property taxes against a political subdivision that provides electricity or irrigation and electricity. This provision does not completely limit the Legislature's ability to tax the public property of such governmental subdivisions, but it does place a limitation on the Legislature's power to hold certain parties liable for such taxes. See § 11. Therefore, article VIII, § 2, requires deference to § 11 and the tax limitation provided therein.

[10] Such deference is consistent with our principles of constitutional interpretation. In the interpretation of the Constitution, a specific clause will be given effect as against a general clause in such manner as to give meaning to both,

and the language of the specific clause will not be restricted by the language of the general clause. *Garrotto v. McManus*, 185 Neb. 644, 177 N.W.2d 570 (1970). Article VIII, §§ 2 and 11, each discuss the payment of taxes by political subdivisions. Section 2 applies to all governmental subdivisions. But § 11 applies to only one specific type of governmental subdivision—those organized for the purpose of providing electricity or irrigation and electricity. Because § 11 is the more specific provision, we will not interpret it as being limited by the language of § 2.

Our principles of constitutional construction also constrain us from adding words to the constitutional language as written. See *Banks v. Heineman*, 286 Neb. 390, 837 N.W.2d 70 (2013). The language of article VIII, § 11, does not indicate that a payment in lieu of tax takes the place of a political subdivision's tax obligations only to the extent its property is used for an authorized public purpose. Rather, § 11 provides that such payments "shall be in lieu of all other taxes." As such, we will not read a public purpose requirement into § 11.

The Department highlights that article VIII, § 2, begins with the phrase "Notwithstanding Article I, section 16, Article III, section 18, or Article VIII, section 1 or 4, of this Constitution or any other provision of this Constitution to the contrary . . . ." We acknowledge that this language gives § 2 precedence over contrary constitutional provisions. However, we do not accept the Department's premise that article VIII, § 11, is contrary to § 2. Section 2 contemplates that the Legislature's ability to tax public property not used for a public purpose may be constrained by other laws. Therefore, a provision such as § 11 that imposes tax limitations is not inherently inconsistent with § 2. Furthermore, §§ 2 and 11 can be interpreted harmoniously, as we will explain below.

### (ii) Article VIII, §§ 2 and 11, Can Be
### Interpreted Harmoniously

Contrary to the arguments of the Department, an interpretation that declines to read a public purpose requirement into article VIII, § 11, does not make it conflict with article VIII, § 2, or "misconstrue[]" the relevant constitutional provisions.

See brief for appellants at 13. The statutory scheme that allows for the assessment of property taxes against the lessees of public property gives effect to § 2 without disregarding the limitations imposed by § 11.

Article VIII, § 2, gives the Legislature the authority to decide how it will treat public property that is not used for an authorized purpose. Among other things, the Legislature is vested with the specific authority to "impose or authorize some or all of such property to be subject to property taxes." See § 2.

Pursuant to this authority, the Legislature enacted a statutory scheme that places liability for property taxes on the lessees of public property not used for an authorized purpose. Section 77-202.11(1) provides that "[l]eased public property, other than property leased for a public purpose as set forth in subdivision (1)(a) of section 77-202, shall be taxed or exempted from taxation as if the property was owned by the leaseholder." Taxes assessed against the lessee

> shall be due and payable in the same manner as other property taxes and shall be a first lien upon the personal property of the person to whom assessed until paid and shall be collected in the same manner as personal property taxes as provided in [Neb. Rev. Stat. §§] 77-1711 to 77-1724 [(Reissue 2009 & Cum. Supp. 2010)].

§ 77-202.11(3).

As with all lessees of public property, lessees of the property of a political subdivision organized primarily to provide electricity or irrigation and electricity may be subject to taxation under § 77-202.11. Article VIII, § 11, does not exempt such lessees, and the language of the statute provides no exemptions, see § 77-202.11. Rather, the statute contemplates that lessees may be taxed for property owned by a political subdivision even if the political subdivision makes a payment in lieu of tax under § 11. The statute provides: "*Except as provided in Article VIII, section 11, of the Constitution of Nebraska*, no in lieu of tax payments . . . shall be made with respect to any leased public property to which this section applies." § 77-202.11(5) (emphasis supplied). This evinces the Legislative intent that in relation to public property owned

by a political subdivision governed by § 11, property taxes (assessed against the lessee) and a payment in lieu of tax may both be collected.

Even if § 77-202.11 were ambiguous on this issue, the legislative history indicates that the Legislature's intent in enacting § 77-202.11 was to allow for the assessment of property taxes against the lessees of property owned by a political subdivision making a payment in lieu of tax under article VIII, § 11. Section 77-202.11 was enacted by L.B. 271. See 1999 Neb. Laws, L.B. 271. During floor debate on L.B. 271, the bill's sponsor discussed how it would apply to Central's lessees: "If this bill is passed . . . the county assessors will be assigning a value to the underlying land, and because there is a lease . . . that value will then be included on the tax rolls, but it won't be a liability of Central, it will be a liability of the leaseholder . . . ." See Floor Debate, Revenue Committee, 96th Leg., 1st Sess. 3775 (Apr. 12, 1999). The sponsor also stated that under L.B. 271, the lessees of public utilities would be required to "pay a tax on the underlying ground." See Floor Debate, Revenue Committee, 96th Leg., 1st Sess. 6533 (May 12, 1999).

Allowing for taxation of the lessees of political subdivisions governed by article VIII, § 11, carries out the purpose of article VIII, § 2, to tax or exempt public property based upon whether it is used for an authorized public purpose. The statute allows for taxation of lessees when the leased public property is not being used for an authorized purpose. See § 77-202.11(1). Leased public property that is used for an authorized public purpose is specifically exempted. See *id*.

At the same time, the statutory scheme created by § 77-202.11 respects the limitations of article VIII, § 11, that prevent the assessment of property taxes against political subdivisions making a payment in lieu of tax. Under § 77-202.11(3), lessees can be assessed property taxes directly, without exposing the political subdivision to liability for taxes upon the property leased to private individuals or entities. The statute specifically states that "[t]he state or its governmental subdivisions shall not be obligated to pay the taxes upon failure of the lessee to pay. . . . No lien or

attachment shall be attached to the property of the state or the governmental subdivisions for failure of the lessee to pay the taxes due." See *id*. Because a political subdivision is not liable for the taxes assessed against its lessees, the assessment of property taxes on the lessees of property owned by political subdivisions making a payment in lieu of tax does not violate § 11.

Section 77-202.11 creates a statutory scheme that is consistent with both the public purpose requirement of article VIII, § 2, and payments in lieu of tax made pursuant to article VIII, § 11. Section 11 exempts political subdivisions which make payments in lieu of tax from taxation. Section 2 and the statutory scheme enacted pursuant thereto permit the Legislature to impose property taxes on lessees of those subdivisions to the extent the property is not used for an authorized public purpose. Under this scheme, the public purpose requirement of § 2 applies to the taxation of lessees despite the fact that the political subdivisions are exempt as per § 11.

The Department agrees that article VIII, §§ 2 and 11, have been harmonized through the legislative scheme allowing for taxation of Central's lessees. But it further asserts that TERC erred by not considering whether the lessees should have been taxed under this scheme for property not used for an authorized public purpose. For the reasons noted previously, TERC did not have jurisdiction to reach the issue of the lessees' liability. Therefore, we do not consider the Department's arguments in relation to whether the lessees should have been taxed.

### (c) Conclusion as to Central

Article VIII, § 11, controls the determination whether Central is liable for property taxes. Under § 11, Central's payment in lieu of tax for tax year 2011 took the place of any property tax obligations it might otherwise have been required to pay, regardless of the purpose for which the property was being used. Therefore, Central was not obligated to pay property taxes once it made the annual payment in lieu of tax.

TERC did not err in reading article VIII, §§ 2 and 11, to be consistent and harmonious or in concluding, based on § 11, that Central was not subject to property taxes for tax year

2011, because it had already made a payment in lieu of tax for that year.

Under § 77-202.11, public purpose would have been determinative of the lessees' tax liability on the relevant parcels. However, for the reasons noted previously, TERC did not have jurisdiction to reach the issue of the lessees' liability. We vacate that part of TERC's order which stated that there should be no separate property tax obligation for the subject properties, there should be no assessed value of the subject property, and any and all property tax obligations had been included in Central's payment in lieu of tax. We make no determination whether the lessees can be assessed property taxes for 2011 and subsequent tax years.

### 3. Other Assignment of Error

[11] The only remaining assignment of error is that TERC erred in taking "statutory notice" and not judicial notice of the legislative history offered by the Department. Because this case presents questions of constitutional interpretation and not statutory interpretation, we need not consider whether TERC gave the legislative history sufficient weight and consideration. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Holdsworth v. Greenwood Farmers Co-op*, 286 Neb. 49, 835 N.W.2d 30 (2013).

### VI. CONCLUSION

We affirm TERC's finding that Central is not liable for additional tax obligations for real property owned by Central and that any such tax obligations are included in Central's annual payment in lieu of tax. To the extent that TERC's order can be interpreted to mean that a lessee's property tax obligation is included in Central's payment in lieu of tax, it is vacated and is of no force and effect. The issue of a lessee's liability was not before TERC.

Affirmed in part, and in part vacated.