## CONCLUSION

The State presented sufficient evidence to establish beyond a reasonable doubt Samantha's status as being habitually truant under § 43-247(3)(b). We reject her argument that the State was first required to show that her school provided the services contemplated by § 79-209(2), and we hold that § 79-209 does not impose any preconditions upon the juvenile court's exclusive and original jurisdiction under § 43-247(3)(b). The judgment of the juvenile court is affirmed.

Affirmed.

Heavican, C.J., participating on briefs.

───────────────

Kerford Limestone Co., appellee and cross-appellant,
v. Nebraska Department of Revenue, a Nebraska
administrative agency, and Douglas Ewald,
in his capacity as the State Tax Commissioner
for the State of Nebraska, appellants
and cross-appellees.

___ N.W.2d ___

Filed March 14, 2014.    No. S-13-035.

1. **Administrative Law: Final Orders: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.

2. **Administrative Law: Judgments: Appeal and Error.** When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Administrative Law: Statutes: Appeal and Error.** To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

4. **Statutes: Appeal and Error.** An appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

5. ____: ____. An appellate court will not read into a statute a meaning that is not there.

6. **Statutes: Legislature: Intent.** The intent of the Legislature may be found through its omission of words from a statute as well as its inclusion of words in a statute.

7. **Statutes: Legislature: Presumptions.** The Legislature is presumed to know the general condition surrounding the subject matter of a legislative enactment, and it is presumed to know and contemplate the legal effect that accompanies the language it employs to make effective the legislation.

8. **Administrative Law: Appeal and Error.** In a review de novo on the record, the district court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.

9. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Lancaster County: Stephanie F. Stacy, Judge. Affirmed in part, and in part reversed and remanded with direction.

Jon Bruning, Attorney General, and L. Jay Bartel for appellants.

Shannon L. Doering and Luke F. Vavricek for appellee.

Heavican, C.J., Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Per Curiam.

## INTRODUCTION

The Nebraska Department of Revenue (Department) and Douglas Ewald, in his capacity as the State Tax Commissioner (collectively the State), appeal, and Kerford Limestone Co. (Kerford) cross-appeals from the district court's order in these tax protest proceedings. Kerford purchased a motor grader for use in its manufacturing business and claimed an exemption from sales and use tax on the purchase under Neb. Rev. Stat. § 77-2704.22 (Reissue 2009). The commissioner found that Kerford had failed to prove that the motor grader was exempt manufacturing machinery and equipment, as defined in Neb. Rev. Stat. § 77-2701.47 (Supp. 2005).

On appeal, the district court reversed the commissioner's determination that to qualify for an exemption, Kerford needed to establish that more than 50 percent of the motor grader's total use was in manufacturing. The court affirmed the

commissioner's determination that Kerford's use of the motor grader to maintain "haul roads" was not a use that qualified the motor grader as exempt under § 77-2701.47. The court remanded the proceedings for a determination whether use of the motor grader to maintain inventory stockpile areas qualified it for an exemption. We affirm in part, and in part reverse and remand with direction.

## FACTS

In January 2006, Kerford purchased a CAT 160H motor grader for use in its limestone mining and manufacturing business. Claiming that the motor grader was exempt from taxation as manufacturing machinery and equipment under §§ 77-2701.47 and 77-2704.22, Kerford did not pay sales or use tax on the purchase. Per stipulation of the parties, Kerford uses the motor grader in its business "to maintain haul roads in and outside of the mine" and to maintain "inventory stockpile areas."

In December 2006, Kerford received a notice of deficiency determination from the Department, reflecting that Kerford owed $24,614 in sales and use taxes, interest, and penalties for various purchases between June 1, 2003, and May 31, 2006, including the motor grader. The parties reached an agreement on all deficiencies except that of use tax on the motor grader, which totaled $14,190, not including interest or penalties. Kerford filed a written protest as to that amount.

Prior to Kerford's protest, the commissioner had issued a revenue ruling interpreting the definition of manufacturing machinery and equipment in § 77-2701.47 for purposes of an exemption under § 77-2704.22. See Nebraska Department of Revenue Ruling 1-05-1 (Oct. 12, 2005). This revenue ruling provided in part: "If machinery and equipment has uses in addition to its manufacturing use, **the manufacturing use must be greater than 50% of total use** to qualify for the exemption." *Id*. (emphasis in original). After the Department sent the notice of deficiency determination but while Kerford's protest was pending, the Department's regulations were amended to include the content of Revenue Ruling 1-05-1. See 316 Neb. Admin. Code, ch. 1, § 107.07 (2011).

At a hearing on Kerford's protest, Kerford challenged the Department's interpretation that § 77-2701.47 restricted application of the manufacturing machinery and equipment exemption to machinery and equipment used for manufacturing more than 50 percent of the time. Kerford argued that the Department's interpretation was contrary to the Legislature's intent to provide a broad exemption, as shown by the plain language of the statute. Kerford also argued that both of the motor grader's uses—to maintain haul roads and to maintain inventory stockpile areas—were related to "'transporting, conveying, . . . or storing' raw materials in manufacturing" (ellipsis in original) and thus qualified the motor grader as manufacturing machinery and equipment under § 77-2701.47(1)(b). According to Kerford, using the motor grader to maintain inventory stockpile areas also qualified as a use in manufacturing under § 77-2701.47(1)(d).

After the hearing, the commissioner upheld the imposition of use tax on the motor grader. The commissioner defended the Department's interpretation of § 77-2701.47 as "a reasonable construction in light of case law on other exemptions to taxation." He determined that under the Department's interpretation, Kerford was not entitled to an exemption for the motor grader's use to maintain inventory stockpile areas, because Kerford had not met its burden of proving "how much the motor grader is used to maintain such inventory piles." Because Kerford did not establish what percentage of the motor grader's total use was devoted to maintaining inventory stockpile areas, the commissioner did not explicitly discuss whether such use was a use in manufacturing under § 77-2701.47. However, the commissioner determined that the motor grader's use to maintain haul roads was not a use in manufacturing. He reasoned that such use was "more in line with the support services that are included in the non-exempt list of assets" in § 77-2701.47(2).

Kerford appealed by filing a petition on appeal and complaint for reversal with the district court. After a hearing, the court reversed the commissioner's order in part, affirmed in part, and remanded for further proceedings. It reversed the

commissioner's determination that Kerford was required to show that the motor grader was used in manufacturing at least 50 percent of the time. Because § 77-2701.47 "includes no language whatsoever specifying—in mathematical terms or otherwise—the amount of time which equipment or machinery must be used in manufacturing to qualify for the exemption," the court found Revenue Ruling 1-05-1 to be "arbitrary" and "wholly unsupported by a plain reading of . . . § 77-2701.47(1)" and declared Revenue Ruling 1-05-1 to be "invalid."

The district court next considered the motor grader's use to maintain haul roads. It affirmed the commissioner's determination that maintaining haul roads was not an exempt use within the plain meaning of § 77-2701.47. The court reasoned that when used to maintain haul roads, the motor grader "neither has direct contact with raw materials, components, or finished products nor is it used to guide, control, operate, or measure the manufacturing process."

Finally, the district court addressed the motor grader's use to maintain inventory stockpile areas. Because the commissioner had not addressed whether such use qualified as a use in manufacturing, the court remanded for further proceedings on this issue. It ordered the commissioner to consider on remand "whether use of the motor grader to maintain inventory piles qualifies the motor grader as 'manufacturing machinery and equipment' under either . . . § 77-2701.47(1)(b) or § 77-2701.47(1)(d)."

The State timely appeals, and Kerford cross-appeals. Pursuant to our statutory authority to regulate the dockets of the appellate courts of this state, we moved the case to our docket. See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

## ASSIGNMENTS OF ERROR

The State assigns, restated, that the district court erred in (1) finding invalid the Department's interpretation of § 77-2701.47 that machinery or equipment was not exempt under that statute unless more than 50 percent of the total use was for use in manufacturing; (2) remanding for consideration whether use of the motor grader to maintain inventory

stockpile areas qualified the motor grader as exempt, because the court was not authorized by Neb. Rev. Stat. § 84-917(6)(b) (Cum. Supp. 2012) to make such remand in combination with reversal on another issue; and (3) remanding for a determination whether using the motor grader to maintain inventory stockpile areas qualified the motor grader for an exemption under § 77-2701.47.

On cross-appeal, Kerford assigns, reordered and restated, that the district court erred by (1) determining that use of the motor grader to maintain haul roads was not an exempt use under § 77-2701.47(1)(b), because such conclusion was inconsistent with the statutory language, and (2) giving deference to the commissioner's determination that use of the motor grader to maintain haul roads did not qualify the motor grader for an exemption under § 77-2701.47.

## STANDARD OF REVIEW

[1-3] "A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act[, Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 2008, Cum. Supp. 2012, & Supp. 2013),] may be reversed, vacated, or modified by an appellate court for errors appearing on the record." *J.P. v. Millard Public Schools*, 285 Neb. 890, 892, 830 N.W.2d 453, 457 (2013). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Smalley v. Nebraska Dept. of Health & Human Servs*., 283 Neb. 544, 811 N.W.2d 246 (2012), *cert. denied* ___ U.S. ___, 133 S. Ct. 1631, 185 L. Ed. 2d 616 (2013).

## ANALYSIS

### Department's Interpretation
### of § 77-2701.47

[4,5] The State argues that the district court erred in concluding that the Department's interpretation of § 77-2701.47, embodied in Revenue Ruling 1-05-1, was invalid. This argument presents a question of statutory interpretation, about which we must "reach an independent conclusion irrespective of the decision made by the court below." See *Smalley*, 283 Neb. at 550, 811 N.W.2d at 251. In this examination of the statute, we are governed by the following principles. An appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Holdsworth v. Greenwood Farmers Co-op*, 286 Neb. 49, 835 N.W.2d 30 (2013). When interpreting statutes, an appellate court will not read into a statute a meaning that is not there. *Id*.

The issue is whether Kerford's purchase and use of the motor grader to maintain haul roads and inventory stockpile areas qualified the motor grader as manufacturing machinery and equipment, which machinery and equipment is exempt from sales and use tax under §§ 77-2701.47 and 77-2704.22. Because the motor grader was not a hand tool, office equipment, a vehicle registered for operation on Nebraska roads and highways, or "computers, software, and related peripheral equipment," the motor grader was not specifically excepted from the definition of manufacturing machinery and equipment. See § 77-2701.47(2). Thus, we focus our analysis on the definition provided in § 77-2701.47(1). We also note that the motor grader met the requirement in § 77-2701.47(1) of being purchased by "a person engaged in the business of manufacturing." For purposes of tax exemptions, corporations are included within the statutory definition of "person." See Neb. Rev. Stat. § 77-2701.25 (Reissue 2009). Additionally, the parties stipulated that Kerford is "in the business of manufacturing" and that Kerford purchased the motor grader in that capacity. As

such, the question whether the motor grader is exempt comes down to its use.

In our examination whether the motor grader was exempt, we must consider whether § 77-2701.47(1) required any particular percentage of the motor grader's total use to be in manufacturing in order for the motor grader to qualify as manufacturing machinery and equipment. The Department claimed that § 77-2701.47(1) exempted machinery or equipment only if its use in manufacturing constituted more than 50 percent of the total use. The district court concluded this interpretation was contrary to the plain language of § 77-2701.47(1). We agree.

Section 77-2701.47(1) provides that manufacturing machinery and equipment includes "any machinery or equipment purchased, leased, or rented by a person engaged in the business of manufacturing for use in manufacturing." It does not set forth what percentage of use must be in manufacturing in order for machinery or equipment to be exempt. The plain meaning of the phrase "any machinery or equipment purchased, leased, or rented . . . for use in manufacturing" is that any amount of use in manufacturing brings machinery or equipment within the statutory definition. Thus, to fall within the definition of manufacturing machinery and equipment in § 77-2701.47(1), machinery or equipment purchased by a "person" engaged in the business of manufacturing must meet only one requirement: any amount of its use is in manufacturing.

The statute establishes no requirements on what percentage of total use of machinery or equipment must be "for use in manufacturing" in order for the purchase of such machinery or equipment to be exempt. By requiring machinery and equipment to be used in manufacturing more than 50 percent of the time, the Department added language to its ruling which is not found in § 77-2701.47(1). We will not add a requirement for the exemption that is not there.

[6] But the State argues that the district court's interpretation of § 77-2701.47(1) added language to the statute. We disagree. The absence of any qualifying language in the phrase "any machinery or equipment purchased, leased, or rented . . . for use in manufacturing" indicates that no temporal qualifications

were intended. "[T]he intent of the Legislature may be found through its omission of words from a statute as well as its inclusion of words in a statute." *Lozier Corp. v. Douglas Cty. Bd. of Equal.*, 285 Neb. 705, 714, 829 N.W.2d 652, 660 (2013). Because no time-based qualifications are imposed upon the uses that bring machinery or equipment within the meaning of the definition in § 77-2701.47(1), any amount of use in manufacturing is sufficient.

If the Legislature had intended to impose temporal qualifications upon the language of § 77-2701.47(1) in the manner contemplated by the Department, the Legislature could have provided that to qualify for an exemption, the use of machinery or equipment in manufacturing must be more than 50 percent of the total use. Indeed, similar language is found in other tax exemption provisions. Under Neb. Rev. Stat. § 77-2704.13(1) (Reissue 2003), the purchase of certain energy sources or fuels is exempt from sales and use tax "when more than fifty percent of the amount purchased is for use directly in irrigation or farming." Sections 77-2704.13(1) and 77-2701.47(1) are both located within chapter 77, article 27, of the Nebraska Revised Statutes. The language of the former statute contains a threshold of more than a 50-percent use to qualify for an exemption, but the latter does not mention any time-based thresholds or qualifications.

[7] This fact is a significant indication of the Legislature's intent in enacting § 77-2701.47(1). "We have observed that the 'Legislature is presumed to know the general condition surrounding the subject matter of the legislative enactment, and it is presumed to know and contemplate the legal effect that accompanies the language it employs to make effective the legislation.'" *In re Invol. Dissolution of Wiles Bros.*, 285 Neb. 920, 928, 830 N.W.2d 474, 481 (2013) (quoting *State ex rel. Wagner v. Gilbane Bldg. Co.*, 276 Neb. 686, 757 N.W.2d 194 (2008)). Given that other statutory exemptions from sales and use tax require the exempt use of property to be more than 50 percent of the total use, we interpret the absence of such language in § 77-2701.47(1) to indicate that the Legislature intended to exempt machinery or equipment if it has any amount of use in manufacturing.

The Department's interpretation of § 77-2701.47(1) was contrary to the plain language of the statute. The district court did not err in reversing the commissioner's decision based on such interpretation.

## MOTOR GRADER'S USE
### IN MANUFACTURING

The next question is whether Kerford used the motor grader in manufacturing. The parties have stipulated that Kerford is "in the business of manufacturing" pursuant to § 77-2701.47(1) and that Kerford purchased the motor grader in that capacity. The parties also stipulated that Kerford has used the motor grader "to maintain haul roads in and outside of the mine" and to maintain "inventory stockpile areas."

Kerford argues that its stipulated use of the motor grader to maintain inventory stockpile areas qualified as a use in manufacturing under § 77-2701.47(1)(d), which provides that the definition of manufacturing machinery and equipment includes "[m]achinery or equipment for use in manufacturing to maintain the integrity of the product . . . ." Whether the statutory language "to maintain the integrity of the product" encompasses the specific act of maintaining inventory stockpile areas is a question of law.

The commissioner denied Kerford's exemption without specifically addressing whether use of the motor grader to maintain inventory stockpile areas was generally a use in manufacturing or, more specifically, a use that maintained the integrity of the product. He determined that the motor grader's use to maintain haul roads was not a use in manufacturing. But because the commissioner interpreted § 77-2701.47(1) as providing an exemption only if more than 50 percent of the total use was in manufacturing and because Kerford failed to prove that the motor grader's use to maintain inventory stockpile areas met such a threshold, he denied the exemption based on Kerford's lack of proof, without making an explicit finding whether maintaining inventory stockpile areas was a use in manufacturing.

In the absence of an express finding by the commissioner on this issue, the district court did not address whether the motor

grader's use to maintain inventory stockpile areas was a use in manufacturing that exempted the motor grader from taxation. Instead, it remanded this question to the commissioner.

[8] The district court's decision to remand for a determination whether maintaining inventory stockpile areas was an exempt use did not conform to the law. Under § 84-917(5)(a), the district court was required to conduct a review of the commissioner's decision "de novo on the record of the agency." See, also, *Nothnagel v. Neth*, 276 Neb. 95, 752 N.W.2d 149 (2008). In a review de novo on the record, the district court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *JCB Enters. v. Nebraska Liq. Cont. Comm.*, 275 Neb. 797, 749 N.W.2d 873 (2008). Once the district court interpreted § 77-2701.47(1) as exempting machinery or equipment with any amount of use in manufacturing, the legal issue before the court was whether maintaining inventory stockpile areas was a use in manufacturing under § 77-2701.47(1)(d).

The district court was faced with not only the legal question whether maintaining inventory stockpile areas was a use in manufacturing but also the commissioner's conclusion on this issue. Although the commissioner did not state whether maintaining inventory stockpile areas was a use in manufacturing, his conclusion on this legal issue was implicit within his order. The commissioner did not expressly find that maintaining inventory stockpile areas was a use in manufacturing but instead focused on whether such use comprised more than 50 percent of the motor grader's total use.

Because the commissioner found Kerford had failed to show that the motor grader's use to maintain inventory stockpile areas was more than 50 percent of the total use, he had to have determined that maintaining inventory stockpile areas was a use in manufacturing. A contrary conclusion would have negated the need to consider whether the maintenance of inventory stockpile areas comprised more than 50 percent of the motor grader's total use. Furthermore, if the commissioner had not concluded that the use to maintain inventory stockpile areas was a use in manufacturing, he would have found that

neither use qualified the motor grader for tax-exempt status. Notably, the commissioner stated that only one of the motor grader's uses—to maintain haul roads—did not qualify as a use in manufacturing. Therefore, the issue and the commissioner's conclusion were directly before the court.

Because the use of the motor grader to maintain inventory stockpile areas was before the district court and because the commissioner implicitly addressed this legal question, the court should have decided this issue upon its de novo review of the record. It was error to remand for further proceedings.

We now decide whether maintaining inventory stockpile areas qualified the motor grader for the manufacturing machinery and equipment exemption. We conclude that such use was an exempt use under § 77-2701.47(1). The motor grader fell within the definition of manufacturing machinery and equipment because it was used "to maintain the integrity of the product." See § 77-2701.47(1)(d).

The "stockpile areas" to which this stipulation referred were piles of rocks that Kerford accumulated when the company produced limestone faster than it could be sold. The piles were separated according to the gradation of the limestone and constituted Kerford's inventory. The parties agree that the motor grader maintained the inventory stockpile areas by pushing rocks that slid off the piles back into the appropriate piles.

Kerford's evidence showed that keeping rocks in piles served two purposes: (1) to keep separation between the piles and (2) to prevent loss of rocks. The State does not dispute these purposes, but describes the motor grader's general function as "cleaning" through the "movement of loose rocks." Brief for appellants at 26.

Whether labeled as cleaning or loss prevention, the motor grader's use around the inventory stockpile areas was a use that maintained the integrity of the product produced by Kerford. A product has integrity when it is in "an unimpaired or unmarred condition" that is in "entire correspondence with an original condition." Webster's Third New International Dictionary of the English Language, Unabridged 1174 (1993). The State proposes a similar definition of integrity—"'sound, unimpaired, or perfect condition.'" Brief for appellants at 26.

Kerford manufactured limestone and limestone aggregate that were sold in bulk and in different sizes. In regard to any particular size of limestone, the aggregate remained in the original and unmarred condition only so long as it stayed grouped with other rocks of the same size. In other words, the integrity of Kerford's product depended upon keeping rocks sorted according to their sizes. Having the motor grader push rocks back into piles ensured both that rocks remained in the appropriate piles according to each rock's size and that customers who ordered limestone of a particular size received rocks of the right gradation. Thus, by keeping the rocks in their respective piles, the motor grader maintained the integrity of Kerford's limestone and limestone aggregate products.

Because Kerford used the motor grader to maintain the integrity of its products as they were stored in inventory stockpiles, the motor grader fell within the definition of manufacturing machinery and equipment in § 77-2701.47(1)(d). As such, under § 77-2704.22, Kerford was entitled to an exemption from sales and use tax on the purchase of the motor grader.

[9] We therefore reverse that portion of the district court's order that remanded this issue for further proceedings before the commissioner. We remand the cause to the district court with direction to enter an order granting Kerford the exemption. Because we reverse the district court's decision to remand, we do not address whether the district court had the authority under § 84-917(6)(b) to order such remand. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Holdsworth v. Greenwood Farmers Co-op*, 286 Neb. 49, 835 N.W.2d 30 (2013).

CROSS-APPEAL

In its cross-appeal, Kerford alleges the district court's determination that the motor grader's use to maintain haul roads did not entitle Kerford to an exemption was error and should be reversed. Specifically, Kerford argues that this portion of the court's order should be reversed, because in it, the court impermissibly deferred to the commissioner's determination, ignored the evidence, and applied § 77-2701.47(1)(b) in a manner

inconsistent with the statutory language. Kerford asserts that use of the motor grader to maintain haul roads was a use in manufacturing that made the motor grader exempt from sales and use tax.

Whether or not maintaining haul roads was a use in manufacturing, the motor grader was exempt from sales and use tax, because it was used in manufacturing when maintaining inventory stockpile areas. And under § 77-2701.47(1), any amount of use in manufacturing is sufficient to qualify for an exemption.

An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Holdsworth*, *supra*. Therefore, we do not consider whether the maintenance of haul roads was an exempt use.

## CONCLUSION

For the reasons set forth, we affirm the judgment of the district court to the extent it rejected the Department's interpretation of § 77-2701.47 as "wholly unsupported by" the statutory language. However, because Kerford's use of the motor grader to maintain inventory stockpile areas was a use in manufacturing, we reverse that portion of the district court's order that remanded the cause for further proceedings before the commissioner and we remand to the district court with direction to enter an order granting Kerford an exemption from sales and use tax on its purchase of the motor grader. We do not address the district court's determination that use of the motor grader to maintain haul roads was not a use in manufacturing.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTION.

WRIGHT, J., participating on briefs.