Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/22/2017 08:10 PM CST

- 166 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
BURDESS v. WASHINGTON CTY. BD. OF EQUAL.
Cite as 298 Neb. 166

William Burdess, appellant, v. Washington County
Board of Equalization, appellee.

___ N.W.2d ___

Filed November 3, 2017.    No. S-17-026.

1. **Taxation: Judgments: Appeal and Error.** An appellate court reviews
   decisions rendered by the Tax Equalization and Review Commission for
   errors appearing on the record. When reviewing a judgment for errors
   appearing on the record, an appellate court's inquiry is whether the deci-
   sion conforms to the law, is supported by competent evidence, and is not
   arbitrary, capricious, or unreasonable.
2. ____: ____: ____. An appellate court reviews questions of law aris-
   ing during appellate review of decisions by the Tax Equalization and
   Review Commission de novo on the record.

Appeal from the Tax Equalization and Review Commission.
Affirmed.

Aaron F. Smeall, of Smith, Gardner & Slusky Law, L.L.P.,
for appellant.

M. Scott Vander Schaaf, Washington County Attorney, and
Emily A. Beamis for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy,
Kelch, and Funke, JJ.

Kelch, J.

# I. NATURE OF CASE

William Burdess filed a petition for review of an order made
by the Nebraska Tax Equalization and Review Commission
(TERC), which affirmed the valuation of the Washington

- 167 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
BURDESS v. WASHINGTON CTY. BD. OF EQUAL.
Cite as 298 Neb. 166

County Board of Equalization (Board) wasteland acres and homesite acres owned by Burdess for tax years 2013 through 2016. On review, Burdess argues that Nebraska law requires that wasteland acres be valued at $0 per acre and that the valuation of his homesite acres is unreasonable because it is not equalized with an allegedly comparable homesite property located one-half mile away.

## II. FACTS

### 1. Valuation of Land and Protest

This case involves two parcels of land owned by Burdess and located in Washington County, Nebraska. Both parcels consist of agricultural land, a homesite, a secondary building, and wasteland. The first parcel contains 80 acres of land, 25.56 of which the parties have stipulated are wasteland. The second parcel contains 60 acres of land, 29.12 of which the parties have stipulated are wasteland. The wasteland on Burdess' two properties, along with all other wasteland in Washington County, was assessed at $290 per acre for tax year 2013, $335 per acre for tax year 2014, and $450 per acre for tax years 2015 and 2016. The homesite acres were assessed at $41,000.

Burdess protested the 2013 through 2016 assessed values of the two parcels to the TERC, arguing that the wasteland should be valued at $0 and that the homesite acres should be assessed at a value no higher than another homesite (the "Sully property") one-half mile away. A hearing was held in November 2016, and evidence was received.

### 2. November 2016 Hearing

### (a) Value of Wasteland

At the hearing, Burdess testified that the wasteland was not cultivatable or profitable, but was instead used for mushroom hunting and walnut-tree harvesting. Burdess testified that he permitted family members and friends to hunt and gather mushrooms on the land, but did not charge anyone any money

- 168 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
BURDESS v. WASHINGTON CTY. BD. OF EQUAL.
Cite as 298 Neb. 166

to do so. Burdess also testified that he had earned approximately $7,500 over the past 50 years selling a few walnut trees on the property, none of which was earned during the tax years at issue. Burdess testified that he had some immature walnut trees still on the property, but that it takes 75 to 100 years for the trees to mature and have any significant value.

On behalf of the Board, the Washington County assessor testified at the hearing. He explained that because Burdess had elected "special value," Burdess' wasteland acres were not valued according to their market value, but according to their special value. "Special valu[e]" is the "value that land would have for agricultural or horticultural purposes or uses without regard to the actual value the land would have for other purposes or uses."[1] Accordingly, special value does not take into account urban development potential.

The assessor testified that in order to determine the special value for properties in Washington County, he looked to the values of property in other counties, such as Burt County, Nebraska, where there is less development potential. The assessor testified that he assessed the wasteland acres based upon actual sales of farmland containing wasteland acres in Burt County and then increased the per acre value in proportion to the increases in the value of other classes of property, such as dryland or irrigated land.

### (b) Value of Homesite Acres

Burdess' homesite acres were assessed at $41,000 for each of the 4 tax years at issue. The Sully property was assessed at $27,000 for tax year 2014. Testimony at the hearing established that both are farm properties, zoned agricultural, and that they are located one-half mile apart.

The assessor testified that the difference in their valuation was due to their location and the difference in the terrain. Despite the properties' proximity to each other, they

---

[1] Neb. Rev. Stat. § 77-1343(5) (Reissue 2009).

- 169 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
BURDESS v. WASHINGTON CTY. BD. OF EQUAL.
Cite as 298 Neb. 166

are located within different market areas within the county. Burdess' homesite is located within "Market Area 6," and the Sully property is located within "Market Area 7," which is classified as a flood plain. The assessor testified that the Sully property is located on a river bottom, while Burdess' property is located on a bluff, and that people will not pay as much to build on the river bottom.

Burdess testified that the Sully property has "never flooded in 52 floods" because "the building site . . . is on high ground." He compared that to his property, which was flooded by a creek in 1999 and 2016.

### 3. TERC's December 2016
#### Order and Appeal

In December 2016, the TERC affirmed the Board's decision as to the value of the wasteland and homesite acres. The TERC found that Burdess did not produce clear and convincing evidence that the wasteland should have been assessed and valued at $0 per acre. The TERC also found that the homesite acres did not warrant value equalized to the Sully property's because the properties are located in two different market areas with significantly different physical characteristics. Burdess appeals.

### III. ASSIGNMENTS OF ERROR

Burdess assigns that the TERC erred in its valuation of the wasteland and in its valuation of the homesite acres associated with the property.

### IV. STANDARD OF REVIEW

[1,2] "We review TERC decisions for errors appearing on the record."[2] When reviewing a judgment for errors appearing on the record, our inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not

---

[2] *Lozier Corp. v. Douglas Cty. Bd. of Equal.*, 285 Neb. 705, 708, 829 N.W.2d 652, 655 (2013).

arbitrary, capricious, or unreasonable.[3] We review questions of law arising during appellate review of decisions by the TERC de novo on the record.[4]

## V. ANALYSIS

Burdess argues that the TERC erred in its valuation of the wasteland and in its valuation of the homesite associated with the property. We address each of these arguments in turn.

### 1. Wasteland

Before beginning our analysis, we note that "wasteland" is a subclass of "agricultural and horticultural land."[5] "Wasteland includes land that [is] not suitable for agricultural or horticultural purposes."[6]

Neb. Rev. Stat. § 77-201(1) (Cum. Supp. 2016) sets forth the general rule that all real property, unless expressly exempt, is subject to taxation and is to be valued at its actual value. However, pursuant to the authority granted by our State Constitution,[7] the Legislature has made agricultural land and horticultural land a separate and distinct class of property for purposes of property taxation.[8] While most real property is valued for taxation purposes at 100 percent of its actual value ("[a]ctual value" is "the market value of real property in the ordinary course of trade"[9]), the Legislature has determined that agricultural land and horticultural land shall be valued

---

[3] *Lozier Corp, supra* note 2.

[4] *Id.*

[5] See Neb. Rev. Stat. § 77-1359(1) (Cum. Supp. 2016) ("[a]gricultural land and horticultural land means a parcel of land . . . which is primarily used for agricultural or horticultural purposes, *including wasteland* lying in or adjacent to and in common ownership or management with other agricultural land and horticultural land") (emphasis supplied).

[6] 350 Neb. Admin. Code, ch. 14, § 002.54 (2007).

[7] See Neb. Const. art. VIII, § 1.

[8] § 77-1359. See, also, Neb. Const. art. VIII, § 1(4).

[9] Neb. Rev. Stat. § 77-112 (Reissue 2009).

- 171 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
BURDESS v. WASHINGTON CTY. BD. OF EQUAL.
Cite as 298 Neb. 166

at 75 percent of its value.[10] And the Legislature has further distinguished agricultural land and horticultural land from other types of real property by allowing the owners of certain agricultural land and horticultural land (land that meets the qualifications set forth in Neb. Rev. Stat. § 77-1344 (Reissue 2009)) to elect "[s]pecial valuation," rather than having their properties valued according to their actual value.

"Special valuation means the value that the land would have for agricultural or horticultural purposes or uses without regard to the actual value the land would have for other purposes or uses."[11] This is in contrast to "[a]ctual value," which takes into account "all the uses to which the real property is adapted and for which the real property is capable of being used."[12]

The special valuation statutes[13] were enacted because of the economic impact that urban development and other nonagricultural development have on neighboring agricultural and horticultural land.[14] Special valuation protects persons engaged in agricultural endeavors from excessive tax burdens that might force them to discontinue those endeavors.[15]

Because Burdess has elected special valuation, the value of his agricultural land, including his wasteland, must be valued under the special valuation statutes.

Burdess argues that Nebraska law requires that the special value of wasteland acres must be $0 per acre. In support of this argument, Burdess relies solely on Neb. Const. art. VIII, § 1(5), which authorizes the Legislature to enact § 77-1343. In turn, § 77-1343(5) defines "[s]pecial valuation" as "the value that the land would have for agricultural or horticultural purposes

---

[10] § 77-201.

[11] § 77-1343(5).

[12] § 77-112.

[13] Neb. Rev. Stat. §§ 77-1343 to 77-1347.01 (Reissue 2009 & Cum. Supp. 2016).

[14] 350 Neb. Admin. Code, ch. 11, § 001 (2007).

[15] *Id.*

- 172 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
BURDESS v. WASHINGTON CTY. BD. OF EQUAL.
Cite as 298 Neb. 166

or uses without regard to the actual value the land would have for other purposes or uses." Because Burdess' wasteland is "not suitable for agricultural or horticultural purposes,"[16] he argues that it must necessarily be valued at $0 per acre.

However, Burdess ignores the statutory provisions that dictate how special value is to be determined. Section 77-201(3) sets forth that certain agricultural land and horticultural land, such as Burdess' wasteland, shall be valued for taxation at 75 percent of its special value. Regarding calculation of special value, § 77-1346 sets forth that the "Tax Commissioner shall adopt and promulgate rules and regulations to be used by county assessors . . . in determining the special valuation of such land for agricultural or horticultural purposes under section 77-1344." Thus, to determine whether the Board was arbitrary, capricious, or unreasonable in its valuation of the wasteland, we must turn to 350 Neb. Admin. Code, ch. 11, § 005 (2007), which sets forth how special value is to be determined.

Subsection 005.02B of 350 Neb. Admin. Code, ch. 11, provides that "[s]pecial valuation of agricultural and horticultural land shall be based on a market analysis of arms length sales that may include property that sold subject to certain probable and legal agricultural and horticultural purposes and uses."

Here, the assessor determined the special value of Burdess' wasteland by valuing it based on a market analysis of arm's-length sales of property sold subject to certain probable and legal agricultural purposes and uses. Specifically, the assessor used actual sales of farmland containing wasteland in a nearby county (Burt County) where urban development had little influence on the price of sales. Burdess does not dispute the value of these sales or argue that the Burt County property was not comparable to his. In sum, he has failed to show that the Board's valuation was arbitrary, capricious, or unreasonable.

---

[16] See 350 Neb. Admin. Code, *supra* note 6.

Per our standard of review, the question presented is whether the TERC's decision to affirm the Board's valuation of the wasteland was based on competent evidence. We find that it was. Therefore, Burdess' first assignment of error is without merit.

## 2. HOMESITE ACRES

Burdess also argues that the homesite acres were not properly valued because they should have been valued similarly to those of the Sully property. Burdess argues that the Sully property is comparable to his homesite acres because both properties are zoned agricultural and they are one-half mile apart.

However, despite their similarities and proximity, we agree with the Board that Burdess' property and the Sully property have sufficient differences to justify the $14,000 difference in valuation. The assessor testified that the properties are located in different market areas; that the Sully property is located on a river bottom, while Burdess' property is located on a bluff; and that people will not pay as much to build on the river bottom.

Competent evidence supports the TERC's decision to affirm the Board's valuation of Burdess' homesite acres. The assessor testified that he based his valuation of Burdess' homesite acres on the sale of similarly sized parcels within the same market area. Although the valuation of Burdess' homesite acres may not be as low as Burdess would like, the TERC's decision to affirm the Board's valuation of Burdess' homesite acres was not arbitrary, capricious, or unreasonable. Therefore, Burdess' second assignment of error is without merit.

## VI. CONCLUSION

For the reasons stated above, we find no errors appearing on the record. Therefore, the TERC's December 2016 order is affirmed.

AFFIRMED.